■ CHARLES HYMAN, INC., et al., Respondents-Appellants, v OLSEN INDUSTRIES, INC., et al., Appellants-Respondents, and METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents. [642 NYS2d 306] —Judgment of the Supreme Court, New York County (Carol Arber, J.), entered June 23, 1994, after non-jury trial which, *inter alia*, awarded plaintiffs the principal sum of

$600,000, plus interest, on their first and fourth causes of action; dismissed defendants-respondents' counterclaims, seeking damages for willful exaggeration of mechanic's liens and breach of contract; and dismissed plaintiffs' second, third, fifth, sixth and eighth through fifteenth causes of action, unanimously modified, on the law, to the extent of vacating judgment in plaintiffs' favor and dismissing plaintiffs' action in its entirety and, except as so modified, affirmed, without costs. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Plaintiffs Mass Transportation Electrical Construction Corp. (MTEC) and Charles Hyman, Inc. are electrical contracting companies operated by plaintiff Anthony J. Provenzano. Defendant T. Frederick Jackson, Inc. is a subsidiary of defendant Olsen Industries, Inc., of which defendant Fred Olsen is the majority shareowner.

At issue in this case is whether Fred Olsen agreed to merge his companies with those operated by Anthony Provenzano (*see, Charles Hyman, Inc. v Olsen Indus.*, 163 AD2d 232). The dispute arises out of an interim letter agreement dated December 4, 1985, signed by Fred Olsen on behalf of defendant T. Frederick Jackson, Inc. and by Anthony J. Provenzano on behalf of plaintiff Charles Hyman, Inc. The letter agreement "is intended to set forth the terms, as we understand them, that would govern the operation of a proposed Jackson/Charles Hyman Joint Venture." According to the agreement, Anthony Provenzano's company (Charles Hyman) was to complete certain contracts entered into by Fred Olsen's company (Jackson) with the New York City Transit Authority (TA) and with Tishman Construction Corporation. It is conceded by defendants that "Jackson was sustaining losses and was having difficulty performing the six projects for the TA. * * * Hyman agreed, among other things, to complete the six TA contracts and to advance the working capital necessary to do so."

Defendants concede that both of Anthony Provenzano's companies (Charles Hyman and MTEC) performed work on the Transit Authority contracts until July 30, 1986. However, the work was not performed under the December 4th interim letter agreement, which provides that it shall become null and void upon either: (1) the parties' failure to extend the agreement, in writing, within 10 days of the date of the letter or, (2) the failure to obtain approval, within 30 days, for the substitution of Charles Hyman, Inc. for the original contractor on the projects undertaken for Tishman Construction Corporation

and on a substantial portion of the projects undertaken for the Transit Authority. It is undisputed that neither of these conditions was fulfilled.

At trial, Anthony Provenzano testified that "the Transit Authority disapproved the joint venture, but recognized us as a subcontractor * * * to T. F. Jackson." Seemingly undeterred by the inconsistency of his positions, Provenzano further asserted that, while the conditions for continuation of the interim letter agreement had not been satisfied, the parties (1) verbally agreed to continue the letter agreement (denominated "Jackson/Charles Hyman Joint Venture"), (2) assumed the relationship, for purposes of completing the Transit Authority contracts, of contractor and subcontractor and, (3) continued to perform as if the agreement were fully enforceable. However, the reality of the relationship between the Provenzano and Olsen companies in connection with the Transit Authority projects is clearly at odds with the joint venture contemplated in the interim letter agreement. In any event, the agreement was rendered unenforceable by the failure of a condition precedent (*Hicks v Bush*, 10 NY2d 488; Calamari & Perillo, Contracts § 138, at 226 [1st ed]; Restatement of Contracts § 250 [a]) and expired, according to its terms, 10 days after it was signed.

Olsen's company, T. Frederick Jackson, Inc., was not the only business encountering problems. The Provenzano companies were also experiencing financial difficulty. In June 1985, the line of credit that had been extended to Charles Hyman, Inc. and MTEC by European American Bank was canceled, and their outstanding debt of approximately $1.3 million was called. The eventual impact on cash flow was pronounced. The record contains numerous returned checks from mid-1986 together with bank advices that the company accounts contained insufficient funds to cover them. In mid-July 1986, Provenzano obtained a loan from Fred Olsen in the amount of $100,000 in order to meet his companies' payrolls. At this time, in their respective capacities as president of Charles Hyman and T. Frederick Jackson, Provenzano and Olsen entered into a second letter agreement dated July 31, 1986 pursuant to which Provenzano's companies, MTEC and Charles Hyman, ceased operations except for the purpose of making an "orderly liquidation" and satisfying outstanding debts.

The preamble to the second agreement recites that its purpose is to protect clients of the Provenzano companies and "to avoid losses for which [those companies] might otherwise be liable" by providing for the completion of their outstanding obligations by T. Frederick Jackson. Pursuant to the agree-

ment, Jackson reassumed responsibility for six remaining Transit Authority contracts that had been delegated to MTEC and Charles Hyman after the approvals called for in the December 1985 interim letter agreement were not forthcoming. The July 1986 agreement grants Jackson the exclusive right to income from the Transit Authority projects, including current receivables, and provides that Jackson will pay its accrued obligations to the Provenzano companies "pursuant to the existing subcontract between us." For completing those contracts in which MTEC/Charles Hyman had designated it as subcontractor, Jackson is to receive its cost plus 10% overhead plus 10% profit. In addition, Provenzano is to be retained by Jackson as a consultant for a period of 6 months at a salary of $16,500 a month, renewable at Jackson's option from month to month.

On July 30, 1986, as contemplated in the letter agreement, MTEC and Charles Hyman employees were transferred to Jackson's payroll. The Provenzano companies' equipment was made available for Jackson's use, and Charles Hyman management became part of the Jackson management committee. This arrangement permitted MTEC and Charles Hyman to continue to service a number of Provenzano's "house" accounts and to avoid defaulting on their obligations to those clients. Provenzano acknowledged that his companies were able to collect accounts receivable from these clients during the third quarter of 1986.

Philosophical differences soon arose between the principals and, in a letter dated September 30, 1986, Anthony Provenzano wrote to Fred Olsen expressing his dissatisfaction at Jackson's refusal to release monies due Hyman and stating the intent to "sever our business relationship". In accordance with an offer of settlement by Fred Olsen, a written agreement to pay MTEC $600,000 as a consulting fee was drafted and sent to Provenzano's attorney on November 5, 1986. However, Provenzano refused to sign it, allegedly on the ground that it failed to recite that the proposed sum was in payment for assets transferred by Charles Hyman to T. Frederick Jackson. A February 13, 1987 letter to Provenzano by Fred Olsen, on behalf of Jackson, notes that the parties "continue to reach for accord" on what is termed the "concept" of a merger, perhaps involving another company, Kiewit Industries Co., with which MTEC was already associated in a joint venture. The letter represents that, despite a history of "aborted arrangements and subsequent misunderstandings", Olsen remains committed to "accomplish an absolute [sic] regarding our relationship and then pursue productive, competitive but yet friendly ventures."

The parties exchanged conflicting account reconciliation statements, Provenzano claiming that Jackson owed his companies $62,907.47 as of April 15, 1987 and Jackson claiming that it was owed some $8,000. On July 28, 1987, Provenzano filed labor and materials liens under the Transit Authority contracts totaling $487,721.16. Two days later, Charles Hyman, Inc. sent Jackson a package of invoices purporting to support the liens. The invoice dates, however, do not correspond to the period during which the work was performed, and many are dated July 27, 1987, the day before the liens were filed. At trial, Anthony Provenzano conceded that the liens amounted to nearly eight times the total claimed in the April 1987 account reconciliation statement and that they included many non-lienable items.

This action was commenced on September 8, 1987. The first six causes of action stated in the amended verified complaint seek an accounting from Olsen and the entities he controls, together with equitable relief. The first cause of action is predicated on defendants' breach of the alleged oral contract to merge the parties' operations into a joint venture. It seeks an order rescinding the transfer of Provenzano's businesses to Olsen and compelling Olsen to return the customers, employees and other things of value taken but not paid for. It also seeks monetary damages in compensation for resultant losses sustained by Provenzano's enterprises. The second cause of action alleges fraud and seeks the same equitable remedies. The third cause of action seeks damages for any diminution in value of Provenzano's business while in Olsen's custody. The fourth cause of action seeks damages for profits taken from Provenzano's businesses while operated by defendants or, alternatively, such profits as would have been earned, whichever is larger. The fifth cause of action alleges unjust enrichment of the Olsen defendants "arising from the fraudulent takeover of Plaintiffs' business". The sixth cause of action alleges the existence of a constructive trust as the result of the fiduciary relationship between the parties. A seventh cause of action alleges that the Olsen defendants succeeded to the interest of plaintiffs and are liable for plaintiffs' debts. The eighth through fifteenth causes of action are for the balance due under contract for work, labor and services in regard to three specific projects. Liens filed with respect to the claims asserted in the eighth through thirteenth causes of action were discharged by bonds issued by Fidelity and Deposit Company, and recovery is additionally sought against the bonding company.

Insofar as is relevant to the cross-appeal, defendants

counterclaimed for breach of contract, alleging that plaintiffs owe them money under the agreements. Damages are also sought for plaintiffs' alleged willful exaggeration of the labor and materials liens.

At trial, plaintiffs sought to prove the existence of an oral joint venture agreement pursuant to which Anthony Provenzano was to receive a percentage of Jackson's stock, a $200,000 annual salary, a seat on the Olsen board, profit-sharing and an expense account. According to Provenzano's testimony, his companies were to merge into a joint venture operating through Jackson. Defendants denied the existence of any joint venture agreement, asserting that plaintiffs are indebted to them for work performed by Jackson on plaintiffs' behalf.

On appeal, defendants take the position that any assets and personnel of Provenzano's businesses were acquired for "good and valuable consideration, including relieving plaintiffs from substantial liability to third parties that plaintiffs could not meet." They assert that the transfer of Provenzano's business operations to defendants is governed by the express terms of the July 31, 1986 letter agreement which, they note, is inconsistent with the oral agreement alleged by plaintiffs.

We begin by observing that the primary purpose of a contract is not to serve as a vehicle for litigation but to document the respective rights and obligations of the parties to a particular transaction. Under the circumstances of this case, it is perhaps also appropriate to note, in the words of Samuel Goldwyn, "A verbal contract isn't worth the paper it's written on." In theory, of course, a parol contract is as enforceable as a written one. As a practical matter, however, for all but the simplest of transactions, the burden of establishing the terms of the verbal contract—which falls to the proponent (*Paz v Singer Co.*, 151 AD2d 234, 235, citing Fisch, Evidence § 1098 [2d ed])—presents a formidable obstacle to its enforcement. Before a court will impose contractual obligation, it must ascertain that a contract was made and that its terms are definite (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482, *cert denied* 498 US 816).

With this background, the assessment offered by Supreme Court reflects the strength of the opposing positions of the parties: "After hearing the testimony of both Anthony Provenzano and Fred Olsen, this Court is constrained to observe that neither of them, in offering their respective versions of the events, was a credible witness." Supreme Court also looked to the documentary evidence to determine the merits of the parties'

claims, finding it to be no more instructive. Noting that the parties presented an abundance of documents in support of their competing claims, Supreme Court observed, "In large measure the volume of paper unfortunately served more to obfuscate the issues than to clarify them."

This Court discerns no reason to depart from the conclusions reached by the Trial Justice with regard to the evidence and, thus, affirms the conclusion that plaintiffs have failed to establish that this matter is governed by an oral contract. Having been content to proceed, for a period of more than two years, without any definitive statement of their rights and duties as participants in various construction projects, the antagonists cannot reasonably expect the courts to divine their purpose. Even if it could be said that they agreed to the eventual merger of their businesses, mutual assent with respect to a general principle is unenforceable, as a matter of contract law, on the ground of indefiniteness, as it amounts to no more than an agreement to agree (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109).

In the absence of credible proof, however, Supreme Court's resort to a settlement offer to fix the value of plaintiffs' claim for unjust enrichment at $600,000 was improper. Following the signing of the agreements in the latter half of 1986, the parties continued to dispute the extent of their respective obligations. The draft of the proposed settlement, which was sent to plaintiffs on November 5, 1986 on behalf of Fred Olsen, recites that it is made "to resolve any and all disputes concerning the extent of these obligations". In the course of trial, Fred Olsen consistently referred to the proposal as "in lieu" of plaintiffs' claims. The perceived merit of his testimony notwithstanding, Olsen aptly assessed his business dealings with Anthony Provenzano as being characterized by "aborted arrangements and subsequent misunderstandings" (letter, Feb. 13, 1987).

Viewed both by its terms and in light of the confusion surrounding attempts to coordinate the operations of the various companies and to define a working financial relationship, Olsen's proposal cannot be regarded as anything more than an offer of compromise. Furthermore, it contemplates that the $600,000 is to be paid for consulting services to be furnished to Jackson by Provenzano over the ensuing six-year period. Thus, the valuation is not indicative of any loss which might have been sustained by defendants, and the draft of the settlement offer was improperly received for this purpose (Richardson, Evidence § 225 [Prince 10th ed]; Fisch, Evidence §§ 796-797 [2d ed]). As this Court emphasized in *Universal Carloading & Dis-*

*trib. Co. v Penn Cent. Transp. Co.* (101 AD2d 61, 63), "Such an offer of compromise, made for the purpose of procuring a settlement of a pending controversy, is not an admission of fact" (citing *Smith v Satterlee*, 130 NY 677).

Supreme Court also erred in awarding damages against Fred Olsen personally. The various documents executed in connection with projects in which plaintiff companies participated were executed by Olsen in his corporate capacity, and plaintiffs have failed to establish any of the factors necessary to justify piercing the corporate veil (*see, Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 140-142).

Plaintiffs' liens were properly discharged for failure to identify the labor supplied or materials provided to defendants (Lien Law § 9 [4]). Because Supreme Court's finding was based upon a failure of proof, we need not reach the parties' competing contentions that the liens were wilfully exaggerated or that, if so, the court should have parsed them to exclude non-lienable items.

Finally, in the absence of a joint venture and, thus, a fiduciary or confidential relationship, Supreme Court erred in directing an accounting in this matter (*Michnick v Parkell Prods.*, 215 AD2d 462; *Palazzo v Palazzo*, 121 AD2d 261; *Reichert v MacFarland Bldrs.*, 85 AD2d 767, 768).

Nor are plaintiffs entitled to any relief based upon their alternative theory of unjust enrichment. A party will not be relieved of the consequences of his own failure to proceed with diligence or to exercise caution with respect to a business transaction (*see, First Nationwide Bank v 965 Amsterdam*, 212 AD2d 469, 472; *Rodas v Manitaras*, 159 AD2d 341, 343). Plaintiffs cannot profess ignorance of the issues which must be resolved in order to engage in a joint venture. Plaintiffs were parties to at least one such venture, with Kiewit Industries Co., and the governing joint venture agreement is included in the record.

That the parties to this dispute may have proceeded improvidently, without a clear agreement as to their purpose or how it might be achieved, does not afford a basis for liability. Furthermore Supreme Court found, "Based on problems with credibility * * * plaintiff[s'] proof as to the amounts due under its (first) cause of action for failure of consideration [breach of the alleged oral agreement] and its (fourth) cause of action for unjust enrichment is not clear". We need only observe that, upon plaintiffs' failure to prove their damages, the court was constrained to render judgment in favor of defendants. Concur—Sullivan, J. P., Ellerin, Rubin and Mazzarelli, JJ.