■ ANDREW MUHLSTOCK et al., Appellants-Respondents, v EDWARD COLE et al., Respondents-Appellants. [666 NYS2d 116] —Judgment, Supreme Court, New York County (Carol Huff, J.), entered February 3, 1997, awarding plaintiff Eugene Stoler $41,702.39 on his breach of contract claim against defendants, unanimously modified, on the law, and the facts, to increase the principal sum awarded to Stoler by $7,390.61, with interest thereon, and otherwise affirmed, without costs. Order, same court and Justice, entered July 26, 1996, confirming the Referee's report which found that plaintiffs Andrew and Robert Muhlstock were defendants' employees at will rather than their partners, and that there was no contract between plaintiffs and defendants on which plaintiffs could base a breach of contract claim, unanimously modified, on the law, and the facts, and remanded for a hearing by the court in accordance with the decision herein, and otherwise affirmed, without costs.

This action arises out of the July 1987 "merger" of two public accounting firms, George Muhlstock & Company (of which the Muhlstock plaintiffs were members) and Cole, Roberts & Leinwander (in which the individual Cole defendants were partners). The combined firm, Cole, Roberts & Muhlstock, was disbanded in August 1989 with the departure of the Muhlstocks. Plaintiff Stoler had joined the combined firm shortly after its formation and left with the Muhlstocks.

In the discussions leading up to the merger, the Muhlstocks and the Coles agreed to a 64-36 split of the profits in favor of the Coles. The parties did not discuss whether losses would be shared. The allocation of the 36% among themselves was determined by the Muhlstocks, not by the management of the merged firm.

The Coles were to make the management decisions for the

firm: Edward Cole was to become the managing partner, and Jeffrey Cole the administrative partner. According to Robert Muhlstock's testimony at the Referee hearing, the Muhlstocks had the right to question the Coles' management decisions, and to have some voice in policy and major expenditure decisions. Robert Muhlstock could not become a partner in the merged firm because he was not a CPA, but he was allowed to participate in the profit-sharing arrangement.

The merger occurred quickly and informally because the Muhlstocks had lost their lease and needed to relocate at once. According to plaintiffs, the parties allegedly reached an oral agreement on July 1, 1987, with terms as described above. Prior to this agreement, there was no discussion of capital contributions. During the first months of joint operations, at Edward Cole's request, the Muhlstocks made a $72,000 contribution based upon their percentage of participation in the profits.

Plaintiff Stoler joined the merged firm after the merger. His employment contract consisted of a September 23, 1987 letter agreement, which provided that he would become a partner effective November 30, 1987 and guaranteed him a minimum of $180,000 in annual compensation. On October 31, 1988, Edward Cole sent Stoler a letter terminating this agreement. The Coles reduced Stoler's figure to $150,000. Though there was a dispute at the Referee hearing as to whether Stoler explicitly agreed to this figure, it is clear that he did continue working there for four months after the old agreement was terminated, until he found other employment.

The 36% share of the merged practice's profits was divided equally among the Muhlstocks and another former partner of their firm. When the latter retired in 1988, the Coles unilaterally reduced the Muhlstock group's share to 27.5%, even though the retirement resulted in no significant loss of clients. The Muhlstocks protested in vain. In 1989, without consulting the Muhlstocks, the Coles merged with another firm, and reduced the Muhlstocks' share to 23.35%.

Due to the Muhlstocks' dissatisfaction with these changes, the parties agreed to terminate their relationship. The Muhlstocks took with them the clients and employees they had brought to the merger.

In October 1989, the Mulhstocks commenced an action for an accounting. In the same action, Stoler sought damages for the Coles' alleged breach of his employment contract. Defendants' counterclaims sought an accounting from Andrew Muhlstock, and damages from Robert Muhlstock and Eugene Stoler for

their alleged breaches of fiduciary duty in seeking affiliation with other firms while still employed by defendants. Significantly, in their verified answer and counterclaims dated November 30, 1989, defendants repeatedly referred to their arrangement with the Muhlstocks as a partnership.

The case was tried before Special Referee B. William Rothberg in May and June of 1994. In his report dated August 31, 1995, the Referee found that the parties to the merger had not intended to create a partnership, for several reasons. First, the Muhlstocks were not entitled to share in the management, as evidenced by the fact that the Coles unilaterally decided to merge with another firm despite Robert Muhlstock's objections. Second, the contribution of capital was not discussed until after the merger. Third, when one of the former George Muhlstock & Co. partners retired, there was no partnership dissolution, and no accounting. Finally, under Education Law § 7408, a person (such as Robert Muhlstock) who is not a CPA cannot be a partner in a CPA firm.

The Referee found that the Muhlstocks were not true partners, but more like glorified employees, who participated in profits but had no other rights and duties of partnership. Since their complaint did not allege that the Coles had promised to pay them a specific amount for any set length of time, they had not shown that there was a contract that the Coles had breached. The Referee concluded that the Muhlstocks were employees at will.

With respect to Stoler, the Referee found that the absence of any contract provisions stating the duration of the agreement rendered him an employee at will. The Coles' unilateral reduction of his compensation was a novation, which Stoler ratified by staying at the firm.

The Referee recommended dismissal of defendants' counterclaims. It was not disloyalty for Stoler or the Muhlstocks to seek another professional affiliation in light of the Coles' reduction of their compensation and failure to consult them on major decisions. Plaintiffs did not take with them any clients who were not theirs originally.

The Referee found that Stoler was entitled to $49,093 on his breach of contract claim, with a set-off of $7,390.61 for services that were apparently performed while he was at the merged firm but billed after he left. The total amount due Stoler was thus $41,702.39.

In its order dated July 26, 1996, the Supreme Court confirmed the report insofar as it dismissed defendants' counterclaims, dismissed the Muhlstocks' action for an account-

ing and found no agreement on which plaintiffs could base a breach of contract claim. In its judgment dated February 3, 1997, the court confirmed the report insofar as it awarded damages of $41,702.39 to Stoler. The Muhlstocks now appeal the court's refusal to allow them to amend their complaint to allege breach of contract. Stoler appeals the set-off of $7,390.61. The Coles cross-appealed from the February 3, 1997 judgment.

In an appeal from confirmation of a Referee's report, the standard is whether the findings are supported by the record (*Nager v Panadis*, 238 AD2d 135).

The record supports the Referee's determination that the Muhlstocks were not partners in the merged firm. They had no real say in management, and did not agree to share the firm's losses (*Chanler v Roberts*, 200 AD2d 489, 491, *lv dismissed and denied* 84 NY2d 903).

However, the Referee erred in precluding amendment of the complaint to include a breach of contract claim by the Muhlstocks. His finding that no oral contract had been shown was contrary to the weight of the evidence.

Before a court will impose a contractual obligation based on an oral contract, the proponent must establish that a contract was made and that its terms are definite (*Charles Hyman, Inc. v Olsen Indus.*, 227 AD2d 270, 275). In *Hyman*, we declined to find that two construction companies had made an oral agreement to merge their businesses. Over the two-year period in which they cooperated on various projects, the parties frequently changed the allocation of tasks, compensation, and responsibilities between themselves due to changing circumstances in their respective businesses.

By contrast, in the instant case, the parties apparently had a definite agreement to share profits in a specified percentage and to allow the Coles to retain management responsibilities, while giving the Muhlstock group discretion to allocate their profit share among themselves. Their intent to merge the two firms in some fashion is also not in doubt. The fact that the duration of this arrangement was unspecified does not necessarily make the agreement too indefinite to enforce.

The Referee's characterization of the Muhlstocks as employees is insupportable in light of their capital contribution to the merged firm. Their investment in the business, at the Coles' request, is evidence that the parties' course of dealing established a type of joint venture. Additionally, though it is not unusual for a professional firm to give high-level employees a share of the profits as part of their salary, such employees do not generally have the discretion to determine how the profits are allocated among themselves, as the Muhlstock group did.

Defendants would not have been prejudiced by plaintiffs' proposed amendment, since it was based on the same facts and evidence as plaintiffs' claim for an accounting. In the absence of unfair surprise to defendants, the liberal rule permitting amendment should have been applied (*McCaskey, Davies & Assocs. v New York City Health & Hosps. Corp.*, 59 NY2d 755, 757). Nor were the defendants prejudicially deprived of an opportunity to try the Muhlstocks' contract claim before a jury. Defendants claimed no prejudice from trying the case before the Referee as to Stoler's breach of contract claim, even though his claim emanated from the same complaint as the Muhlstocks'. Moreover, defendants arguably waived the right to a jury trial by asserting an equitable counterclaim against Andrew Muhlstock for an accounting. This right was not revived by their subsequent withdrawal of the counterclaim (*Downtown Art Co. v Zimmerman*, 227 AD2d 226).

The Referee properly determined that the Coles' reduction of Stoler's compensation was a novation that he ratified by remaining at the merged firm. However, the $7,390.61 set-off was improper. Defendants do not challenge plaintiffs' contention on appeal that the fees that the Referee believed Stoler had wrongfully collected while at his subsequent employer for work done while at defendants' firm were in fact deposited in the escrow account awaiting Justice Huff's decision.

Finally, the Referee correctly dismissed defendants' counterclaims, as plaintiffs did not breach any duty of loyalty to defendants. Plaintiffs were justified in seeking professional association elsewhere in light of the Coles' reduction of their compensation. Plaintiffs did not solicit the Coles' clients away from their firm. It would be inequitable to prevent plaintiffs from reacquiring their own former clients. Like departing partners in a law firm (*see, Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 120), departing members of an accounting firm should at least be allowed to "inform firm clients with whom they have a prior professional relationship about their impending withdrawal and new practice". Concur—Sullivan, J. P., Rosenberger, Rubin and Andrias, JJ.