15-3323-cv
Ferguson v. Ferrante

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of November, two thousand sixteen.

PRESENT: PIERRE N. LEVAL,
　　　　　 ROBERT D. SACK,
　　　　　 REENA RAGGI,
　　　　　　　　　 *Circuit Judges.*

------------------------------------------------------------------------

DOUGLAS FERGUSON,
　　　　 *Plaintiff-Counterclaim-Defendant-Appellee*,

　　　　　　　　　　v.　　　　　　　　　　　　　　　　　No. 15-3323-cv

MATTHEW FERRANTE, individually, AURORA INFORMATION SECURITY & RISK, LLC, a New York Limited Liability Company,
　　　　 *Defendants-Counter-Claimants-Appellants*,[*]

------------------------------------------------------------------------

FOR APPELLANTS:　　　　　　　　Peter A. Ouda, Peter A. Ouda, LLC, Somerville, New Jersey.

FOR APPELLEE:　　　　　　　　　Randall L. Rasey and William Kang, Barton LLP, New York, New York.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 9, 2015, is AFFIRMED.

Defendants Matthew Ferrante and Aurora Information Security & Risk, LLC ("Aurora") appeal from a judgment entered after a bench trial in favor of plaintiff Douglas Ferguson. Defendants challenge (1) the denial of Ferrante's pre-trial motion for summary judgment on Ferguson's fraudulent-inducement claim and the grant of summary judgment to Ferguson on two of Ferrante's affirmative defenses; (2) the trial findings that (a) Ferrante fraudulently induced Ferguson to leave his position at Barclays Bank to work for defendant Aurora, and (b) Ferguson did not breach his duty of loyalty to Aurora; and (3) the failure to award Aurora $736,000 in expectation damages for Ferguson's breach of a settlement agreement.

After trial, we review a denial of summary judgment de novo only where an appellant claims a pure error of law. See Schaefer v. State Ins. Fund, 207 F.3d 139, 142 (2d Cir. 2000). When reviewing a judgment following a bench trial, we review a district court's conclusions of law de novo and its findings of fact for clear error, without second-guessing its credibility determinations. See Krist v. Kolombos Rest Inc., 688 F.3d 89, 95 (2d Cir. 2012). In applying these principles, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. <u>Summary Judgment Challenge</u>

Ferrante claims that he was entitled to summary judgment on Ferguson's fraudulent-inducement claim because a January 12, 2012 settlement agreement (the "Settlement Agreement") released and resolved all claims against all parties in this action and barred Ferguson from attempting to impose personal liability on Ferrante. On <u>de novo</u> review, we conclude that the Settlement Agreement did not foreclose Ferguson's fraudulent-inducement claim against Ferrante because Ferrante was not a party to the Settlement Agreement.

Under New York law, which controls here, settlement agreements must be enforced according to the plain meaning of their language. <u>See</u> <u>Brad H. v. City of New York</u>, 17 N.Y.3d 180, 185, 928 N.Y.S.2d 221, 224 (2011). The Settlement Agreement states that "<u>the parties</u> agree to release each other from all actions, causes of action, suits, debts, dues, sums of money, accounts, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, counterclaims and demands whatsoever (collectively, 'Claims'), except for claims arising out of the breach of this Agreement or those arising as a direct result of gross negligence, fraudulent conduct or willful misconduct of a party hereto (including its principals, employees and agents)." Appellants' App'x 429 (emphasis added). Thus, by its plain language, the Settlement Agreement releases only certain claims between "the parties," and the Agreement defines "parties" as "Aurora and Doug [Ferguson]." <u>Id.</u> at 426; <u>see id.</u> ("Whereas, <u>Aurora and Doug</u> wish to terminate their relationship and resolve outstanding issues between <u>them</u>." (emphases added)); <u>id.</u> ("Aurora and Doug wish to enter into this Agreement.").

3

Accordingly, Ferguson's fraudulent-inducement claim against Ferrante, a non-party to the Agreement and a principal of Aurora, was not barred by the Settlement Agreement's release. See Bank of Am. Nat'l Tr. & Sav. Ass'n v. Gillaizeau, 766 F.2d 709, 713 (2d Cir. 1985) (noting that New York law requires release to contain "explicit, unequivocal statement of a present promise to release defendant from liability" (internal quotation marks omitted)). In sum, the plain language of the Settlement Agreement does not support Ferrante's summary judgment motions and, in fact, supports summary judgment for Ferguson on the Twentieth Affirmative Defense.[1]

In urging otherwise, Ferrante persists in his Thirteenth Affirmative Defense, i.e., that Ferguson's fraudulent-inducement claim was duplicative of his settled breach of contract claim. But, as already explained, the Settlement Agreement resolved only claims between Ferguson and Aurora, and expressly did not cover fraud claims against Aurora or its principals, employees, or agents. Thus, there is no duplication. See Richbell Info. Servs. v. Jupiter Partners, 309 A.D.2d 288, 305, 765 N.Y.S.2d 575, 589 (1st Dep't 2003) ("[F]raud claim may be dismissed as duplicative only as against a

---

[1] No different conclusion is warranted by the fact that Ferrante signed the Settlement Agreement or by a provision in the Settlement Agreement providing that Aurora's principals would not "be personally responsible for any of the obligations set forth" therein. See Appellants' App'x 430–31. Although Ferrante twice signed the Settlement Agreement, he signed in his individual capacity only "with respect to paragraph 17," the "no personal liability" provision. This express limitation defeats any argument that Ferrante's signature made him a party to the entire Settlement Agreement. As for the "no personal liability" provision, its plain language makes clear that, as Aurora's principal, Ferrante could not be held personally responsible for any of the obligations set forth in the Settlement Agreement, which language is completely consistent with Ferrante not being a party to the Settlement Agreement. The provision says nothing about Ferrante's personal liability as to claims Ferguson had against him in his individual capacity, let alone his potential personal liability for fraudulent conduct.

4

defendant against whom the related contract claim is viable." (emphasis in original)). Moreover, the fraudulent-inducement claim is based on alleged misconduct that predates the Settlement Agreement's execution and is unconnected with its alleged breach.

Accordingly, we identify no error of law in the denial of Ferrante's motion for summary judgment on Ferguson's fraudulent-inducement claim or in the award of summary judgment in favor of Ferguson on defendants' Thirteenth and Twentieth Affirmative Defenses.

2.    Fraudulent Inducement

Ferrante argues that the evidence is insufficient to support the district court's trial finding that he fraudulently induced Ferguson to terminate employment at Barclays Bank and to join Aurora. The argument fails because the district court expressly credited Ferguson's testimony that Ferrante promised Ferguson a 40% equity interest in Aurora, which testimony, it noted, was corroborated by, among other things, (1) mock business cards that Ferrante created for Ferguson, listing Ferguson as Aurora's "Co-Founder/Managing Director," a similar title to that Ferrante held, Appellees' App'x 1355, 1359; (2) an August 9, 2010 Skype conversation in which Ferrante told Ferguson that he would ask his lawyers "for a quote to have [Ferguson] added as a partner" and discussed the possibility of issuing Ferguson "[p]hantom stock" so as to retain Aurora's status as a limited liability company, id. at 988; (3) emails dated November 23 and 24, 2010, in which the two men discussed Ferguson contributing capital for Aurora's "core expenses," id. at 1420–21; and (4) an August 23, 2011 email in which Ferrante asked Ferguson to confirm that he was "committed at this point to the profits . . . as well as to the expenses"

5

and noted that he would not "take all the risk with [his] capital" alone and then divide "all the profits," id. at 996, as well as evidence that Ferrante made the promises intending not to carry them out. The district court also credited Ferguson's testimony that he would not have resigned from Barclays but for Ferrante's representation that Ferguson could have "'40 percent equity ownership' of Aurora." Findings of Fact & Conclusions of Law at 8, Ferguson v. Ferrante, No. 13-cv-4468 (VEC) (S.D.N.Y. Oct. 8, 2015), ECF No. 142.

By contrast, the district court found much of Ferrante's testimony not credible. See, e.g., id. at 19 (observing that Ferrante was "largely not credible" in that he adhered to "an implausible narrative," and his demeanor "bespoke a witness who had predetermined what testimony he thought would be favorable and was resolved to provide it, without regard to whether it was true"). The district court ultimately concluded that "Ferrante told Ferguson whatever Ferrante thought he wanted to hear in order to persuade him to join Aurora and that Ferrante never intended to follow through on what he claimed he was already doing with regard to bringing Ferguson in as an equity partner." Id. at 8.

Thus, the record here, especially when reviewed in light of the district court's credibility findings, precludes our finding that "there [was] such a complete absence of evidence supporting the verdict" that no "reasonable and fair minded person[]" could have found in Ferguson's favor. Vangas v. Montefiore Med. Ctr., 823 F.3d 174, 180 (2d Cir. 2016) (internal quotation marks and alteration omitted); see Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 62 (2d Cir. 2012) (listing elements of fraudulent-inducement claim under New York law as (1) material misrepresentation of

6

presently existing or past fact, (2) intent to deceive, (3) reasonable reliance on misrepresentation, and (4) resulting damages). Accordingly, we affirm the district court's trial judgment in favor of Ferguson on the fraudulent-inducement claim.

3.    Duty of Loyalty

Aurora challenges the bench-trial decision in favor of Ferguson on its breach-of-duty-of-loyalty claim, arguing that the district court clearly erred in finding that Ferguson did not solicit any of Aurora's clients. We will not upset such a finding of fact "unless we are left with the definite and firm conviction that a mistake has been committed." Mota v. Castillo, 692 F.3d 108, 114 (2d Cir. 2012) (internal quotation marks omitted). We have no such conviction here. Aurora's claim that Ferguson's mere act of notifying certain clients of his departure "r[o]se to the level of solicitation," Appellants' Br. 43, is contrary to law, see Muhlstock v. Cole, 245 A.D.2d 55, 59, 666 N.Y.S.2d 116, 120 (1st Dep't 1997) (rejecting claim that plaintiff breached duty of loyalty or solicited clients because "departing members of an accounting firm should at least be allowed to inform firm clients with whom they have a prior professional relationship about their impending withdrawal and new practice" (internal quotation marks omitted)).

Thus, we cannot conclude that the district court erred, much less that it clearly erred, in finding that Ferguson did not breach his duty of loyalty to Aurora.

4.    Damages

Aurora faults the district court for not including $736,000 expended on network security in its calculation of damages resulting from Ferguson's breach of the Settlement Agreement. We review such a challenge for clear error, see Wolff & Munier, Inc. v.

Whiting-Turner Contracting Co., 946 F.2d 1003, 1009 (2d Cir. 1991) (noting that "amount of recoverable damages is a question of fact"), which we do not identify here. For substantially the reasons stated by the district court, we conclude that the expense Aurora incurred to protect its network from a possible hack by Ferguson was neither a natural and probable consequence of Ferguson's breach nor a cost within the contemplation of the parties at the time of the Settlement Agreement and, therefore, was not recoverable. See Findings of Fact & Conclusions of Law at 31, Ferguson v. Ferrante, No. 13-cv-4468 (VEC) (S.D.N.Y. Oct. 8, 2015), ECF No. 142; see also Kenford Co. v. County of Erie, 73 N.Y.2d 312, 319, 540 N.Y.S.2d 1, 3–4 (1989) (explaining that nonbreaching party typically may recover only "general damages which are the natural and probable consequence of the breach" but that "unusual or extraordinary damages" may be recovered where they were "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (internal quotation marks omitted)).

5.    Conclusion

We have considered defendants' remaining arguments and conclude that they are without merit. We, therefore, AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

8