13-184-cv
John Delaney v. Bank of America Corp., et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————————————

August Term, 2013

(Argued: January 14, 2014                    Decided: September 5, 2014)

Docket No. 13-184-cv

———————————————

JOHN DELANEY,

*Plaintiff-Appellant,*

-*v.*-

BANK OF AMERICA CORPORATION, MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,[*]

*Defendants-Appellees.*

———————————————

Before:                    WINTER, WESLEY and HALL, *Circuit Judges.*

———————————————

On appeal from a judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J.*), entered on December 11, 2012, granting summary judgment in favor of plaintiff's former employer on plaintiff's claims of age discrimination, under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, and breach of contract.

AFFIRMED.

———————————————

JONATHAN HONIG, Feder Kaszovitz LLP, New York, NY, *for Plaintiff-Appellant.*

———————————————

[*] Defendants-Appellees have indicated in their brief on appeal that Defendant-Appellee Merrill Lynch, Pierce, Fenner & Smith, Inc. was improperly pled as Bank of America Merrill Lynch f/k/a Banc of America Securities, LLC. The Clerk of the Court is therefore requested to amend the caption as above.

PATRICK J. LAMPARELLO, III (STEVEN D. HURD, *on the brief*), Proskauer Rose LLP, New York, NY, *for Defendants-Appellees.*

_____

PER CURIAM:

Plaintiff-Appellant John Delaney ("Plaintiff-Appellant" or "Delaney") appeals from the December 11, 2012 judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J.*) granting summary judgment in favor of Appellant's former employers, Defendants-Appellees Bank of America Corporation, and Merrill Lynch, Pierce, Fenner & Smith, Inc.[1] (collectively "Defendants-Appellees" or "BoA"), on his claims of age discrimination, under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and breach of contract. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

Delaney began working for BoA's predecessors in 1988 and continued to be employed by them through multiple mergers and acquisitions until his termination in September 2010. At all relevant times, Delaney remained an at-will employee. From 1996 to 2006, Delaney worked in the High Yield Sales Group in which he predominantly sold "high yield products." His compensation included a base salary and, where applicable, an annual award of discretionary incentive compensation.

In 2005, Delaney was transferred to the Fixed Income Middle Markets Sales Group ("Middle Markets"). Although employees of this group "were expected to sell a wider array

---

[1] *See* supra n.*.

2

of products and cover smaller accounts," Delaney continued to sell the same high yield products. He also remained in the same physical location with other members of the High Yield group. Delaney, however, was assigned to a different reporting line and became eligible for compensation under the Middle Markets Sales Compensation Plan whereby he received an annual salary and quarterly commission on the basis of his production credits. While working for Middle Markets, his commissions exceeded $1.6 million in 2009. That same year, Delaney also received a rating of "exceeds/meets" expectations on his annual performance review.

In March 2010, Delaney was transferred back to the High Yield group. According to Delaney, this transfer "was a reward for [his] outstanding work developing middle markets accounts into higher revenue, institutional accounts." Appellant Br. 6. Delaney also claims that BoA "agreed that his compensation would not suffer from the transfer because he would be awarded sufficient accounts to generate production credits so that his compensation would remain at least level and, hopefully, increase." *Id.* at 7. For BoA, however, this transfer was the result of an institutional re-organization aimed at removing all High Yield sales personnel from Middle Markets, which closed in 2012. As a result of this transfer, although Delaney remained in the same physical location and continued to manage the same accounts, his compensation reverted to the one associated with High Yield employees, *i.e.*, a base salary and, if eligible, a discretionary incentive compensation award. Delaney also received two additional accounts upon his transfer.

In July 2010, Delaney received a negative mid-year performance review. According to the review, his production had decreased by seven percent, while the High Yield group's

production as a whole had increased by twenty percent. The weaknesses cited included that he was a "momentum sales man, [who] could improve [his] credit skills," had "difficulty multi-tasking," "should cover less accounts," and "need[ed] to focus". The review also noted a concern as to whether Delaney was able to handle the accounts assigned to him.

The following month, as part of a company-wide reduction-in-force ("RIF"), High Yield managers were instructed to select underperforming employees whose dismissal would have the least impact on the business going forward. Delaney's performance continued to suffer. He was ranked 136th across all BoA sales personnel for the year in September 2010, and his performance in the High Yield group was the worst of all employees at his level. Delaney, along with 418 other BoA employees, was selected for inclusion in the September 2010 RIF process. BoA terminated Delaney's employment that same month. At the time, Delaney was fifty-six (56) years old, the oldest member of the High Yield group and the only member of that group to be terminated.

Following his termination, Delaney brought this employment discrimination action against BoA, alleging claims of age discrimination in violation of the ADEA and breach of contract. With respect to the breach of contract claim, Delaney alleges that BoA breached an oral promise made to him "that his compensation would not suffer from [his] transfer [to the High Yield group] because he would be awarded sufficient accounts to generate production credits so that his compensation would remain at least level and, hopefully, increase." Appellant Br. 7. BoA moved for summary judgment, which the district court granted after determining that Delaney failed to establish a *prima facie* age discrimination case. Then assuming *arguendo* that Delaney had established a *prima facie* case, the district court

4

further ruled that Delaney's evidence was insufficient "to permit a reasonable fact-finder to conclude that he would not have been terminated but for his age," and thus that he failed to establish that BoA's legitimate nondiscriminatory reason—that Delaney was terminated as part of a RIF and selected based on his poor performance—was a pretext for age discrimination. *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 513 (S.D.N.Y. 2012). Having dismissed Delaney's federal claim, the district court, pursuant to 28 U.S.C. § 1367, exercised supplemental jurisdiction over his state law claim and determined that none of the conversations and statements identified on the record constituted an enforceable contract. *Id.* at 517-18. Judgment was entered in favor of BoA. Delaney timely appealed.

## DISCUSSION

On appeal, Delaney argues that in granting summary judgment in favor of BoA, the district court failed to view the evidence in the light most favorable to him as the non-moving party. Specifically, Delaney contends that if the district court had properly applied this Court's decision in *Weiss v. JP Moran Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009) (summary order), to the proffered evidence, it would have concluded that BoA's legitimate nondiscriminatory reason lacked credence and was instead a pretext for age discrimination. Delaney also challenges the district court's decision to exercise supplemental jurisdiction over his contract law claim and further contends that if the district court had properly considered the submitted evidence, it would have concluded that he had established a breach of contract claim against BoA.

We review *de novo* a district court's grant of summary judgment. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). In so doing, we "construe the facts in the light

5

most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009) (internal quotation marks omitted). "A dispute about a 'genuine issue' exists . . . where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). We uphold a grant of summary judgment "if the evidence, viewed in the light most favorable to the party against whom it was entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." *Global Network Commc'ns, Inc. v. City of New York*, 562 F.3d 145, 150 (2d Cir. 2009).

## I.

We consider first Delaney's age discrimination claim. It is well established that the burden-shifting framework set forth by the Supreme Court in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to claims bought under the ADEA. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). "Under *McDonell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Id.* Once this burden is met, the defendant must then "articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* (internal quotation marks omitted). "The defendant need not persuade the court that it was actually motivated by the proffered reason[ ]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (citation omitted). When the employer meets its burden, "the plaintiff can no longer rely on the prima facie case," *Gorzynski*, 596 F.3d at 106, but "must prove that the employer's proffered reason was

a pretext for discrimination," *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). Since the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 173 (2009), eliminating the mixed-motive analysis as to ADEA claims, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA" satisfies this burden by presenting facts, which "taken in [his] favor, suffice to . . . [show that] a triable issue [exists] as to whether [his] age was a 'but for' cause of [his] termination." *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180) (internal quotations omitted).

The district court determined that Delaney failed to establish a *prima facie* case of age discrimination, but because this burden is "not onerous," *Burdine*, 450 U.S. at 253, we will assume *arguendo* that Delaney has met this burden. We agree with the district court that BoA has satisfied its burden to articulate a legitimate, nondiscriminatory reason for Delaney's termination. We have previously held that a RIF constitutes a legitimate, nondiscriminatory reason for termination of employment. *See, e.g.*, *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168-69 (2d Cir. 2001); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000). Here, BoA has explained that Delaney's employment was terminated as part of a company-wide RIF to eliminate positions that generated insufficient value and that could be eliminated with little impact to the company's functioning and further that Delaney was selected for termination based on his poor performance. Specifically, the record evidence shows that two months prior to his termination Delaney received a negative mid-year performance review that raised concerns about his productivity level. Moreover, the evidence indicates that in September 2010, Delaney was ranked 136th across all BoA sales personnel for the year and his performance in the High Yield group was the worst of all employees at his level.

7

We must now decide whether "the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find . . . . 'that age was the 'but-for' cause of the challenged adverse employment action.'"[2] *Gorzynski*, 596 F.3d at 106 (quoting *Gross*, 557 U.S. at 180). "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employers *only* consideration, but rather that the adverse employment action[ ] *would not have occurred without it*." *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011) (citing *Gross*, 557 U.S. at 175-77) (emphasis added). As the district court correctly determined, the evidence on the record establishes that BoA engaged in a RIF in September 2010 and that 418 other

---

[2] In his Reply Brief, Delaney contends that the "but-for" causation standard is a "trial proof burden [having] . . . no bearing on the burden at issue on summary judgment." Reply Br. 23. Specifically, Delaney relies relentlessly on a summary order of this Court, *Weiss v. JP Morgan Chase & Co.*, which states that "[a]n employee may satisfy the ultimate burden of proving pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" to argue that the evidence taken in a light most favorable to him supports his claim that the RIF was a "subterfuge" designed to disguise BoA's discriminatory animus. 332 F. App'x 659, 661 (2d Cir. 2009) (summary order); Reply Br. 21. In the first instance, pursuant to Local Rule 32.1.1., "a summary order is not citable as precedent." *U.S. v. Branch*, 538 F.2d 314, 314 n.* (2d Cir. 1976). Second, this particular summary order was issued thirteen (13) days prior to the Supreme Court's decision in *Gross* establishing that a "but-for" causation standard applies to ADEA claims, *Gross*, 557 U.S. at 180. Since *Gross* has come down, this Court has, as it must, continuously applied a requirement of "but-for" causation in the pretext analysis of the *McDonnell Douglas* framework in the ADEA context, including at the summary judgment stage. *See, e.g., Taddeo v. L.M. Berry & Co.*, 526 F. App'x 121, 122-23 (2d Cir. 2013) (summary order); *Timbie v. Eli Lilly & Co.*, 429 F. App'x 20, 21-22 (2d Cir. 2011) (summary order); *Gorzynski*, 596 F.3d at 101, 106; *Bolmer v. Oliveira*, 594 F.3d 134, 148 (2d Cir. 2010). Additionally, we note that the cases cited in *Weiss* and relied upon by Delaney do not involve age discrimination under the ADEA, but instead involve an alleged Employee Retirement Income Security Act of 1974 violation and a Title VII gender-based discrimination claim. *See Burdine*, 450 U.S. at 250-51; *see also Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1109 (2d Cir. 1988). Accordingly, we disregard Delaney's arguments as to *Weiss's* purported application to the pretext analysis in this case particularly in light of the fact that it does not state the law of this Circuit.

employees were included on that month's RIF list.  Although Delaney was the only member of the High Yield group to be terminated and also the oldest, the evidence supports BoA's assertion that Delaney was terminated because of his poor performance.  In fact, as noted above, in September 2010, Delaney was ranked 136th among all other BoA sales personnel and had the worst performance of employees in his group at his level.  Although Delaney makes much of his 2009 annual performance review in which he received a rating of "exceeds/meets" expectations, the evidence demonstrates that his performance suffered in 2010 after his return to the High Yield group.

While we must ensure that employers do not act in a discriminatory fashion, we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997) (citation omitted).  The only age-related evidence that Delaney seeks to introduce is the draft Equal Employment Opportunity Commission ("EEOC") discrimination charge filed by C.G.,[3] the second-oldest member of the High Yield group, who was terminated six months after Delaney in March 2011.  In the draft EEOC charge, C.G. alleges that he was terminated on the basis of his age and that colleagues and managers made repeated comments concerning his age.  As the district court correctly held, however, this evidence is inadmissible on hearsay grounds.  *See* Fed. R. Evid. 801(c), Fed. R. Civ. P. 56(e).  As the district court correctly held, the draft EEOC charge is inadmissible hearsay—an out-of-court statement that Delaney would rely on to show the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Materials submitted in support of or in opposition to a motion for summary judgment "must be admissible themselves or must

---

[3] We, like the district court, use C.G.'s initials so as to respect his privacy.  *See Delaney*, 908 F. Supp. 2d at 505 n.5.

contain evidence that will be presented in admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (*per curiam*); *accord* Fed. R. Civ. P. 56(c), (e). Even assuming, however, that Delaney could present the evidence from the EEOC charge in admissible form at trial by calling C.G. as a witness, the evidence would not call into doubt the nondiscriminatory reason BoA has proffered for Delaney's termination. Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding Delaney's own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of Delaney's termination.

Delaney's remaining arguments center on his claims that BoA engaged in a "campaign against the oldest High Yield Sales group members" and a "simultaneous action against the two oldest members of the High Yield" group. Appellant Br. 16, 28 n.10; Reply Br. 1. Delaney, however, does not point to any admissible evidence in support of these claims. "Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Gorzynski*, 596 F.3d at 101. Delaney's allegations do not suffice to create a genuine issue of fact as to whether his age was the but-for cause of his termination, i*d.* at 106; his ADEA claim therefore fails.

## II.

We turn next to Delaney's breach of contract claim. First, we review the district court's exercise of supplemental jurisdiction for abuse of discretion. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same

case or controversy," 28 U.S.C. § 1367, *i.e.*, "derive from a common nucleus of operative fact," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation marks omitted). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). That said, a district court does not abuse its discretion where the "values of judicial economy, convenience, fairness, and comity" support the exercise. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In this case, Delaney's federal and state claims are based on his employment and termination by BoA, and they clearly derive from a common nucleus of operative facts. Moreover, discovery is complete, and Delaney's breach of contract claim does not turn "on novel or unresolved questions of state law." *Cf. Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (internal quotation marks omitted). We hold therefore that the district court did not exceed the bounds of its discretion in exercising supplemental jurisdiction over Delaney's non-federal claim.

Second, we review Delaney's allegation in support of his breach of contract claim. The district court correctly noted that Delaney's various statements created an ambiguity as to the actual nature of the oral promise he asserted was made to him by BoA. *Delaney*, 908 F. Supp. at 515. On appeal, Delaney contends that the oral promise concerned an agreement "that his compensation would not suffer from [his] transfer [to the High Yield group] because he would be awarded sufficient accounts to generate production credits so that his compensation would remain at least level and, hopefully, increase." Appellant Br. 7.

Under New York law, a binding contract can be formed without the execution of a written agreement. S*ee Mun. Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144,

11

148-49 (1979). Nonetheless, and as the district court recognized, the plaintiff must demonstrate that the terms of any agreement are definite. *See Charles Hyman, Inc. v. Olsen Indus., Inc.*, 227 A.D.2d 270, 275 (N.Y. App. Div. 1996) ("[T]he burden of establishing the terms of the verbal contract—which falls to the proponent—presents a formidable obstacle to its enforcement. Before a court will impose [a] contractual obligation, it must ascertain that a contract was made and that its terms are definite." (citing, in relevant part, *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) (other citations omitted)). In this case, Delaney's allegation that BoA promised that his compensation would not suffer lacks the definiteness required by New York law. *Maffea v. Ippolito*, 247 A.D.2d 366, 367 (N.Y. App. Div. 1998) (finding that the terms of an oral agreement to split the proceeds of a lottery win were "not sufficiently definite to be enforced"); *see also Hecht v. Helmsley-Spear, Inc.*, 65 A.D.3d 951, 951 (N.Y. App. Div. 2009) ("The oral assurances lacking any actual terms as to the amount, form, and timing of payment of any compensation, and including no methodology or custom providing for the determination of the same, failed to manifest a clear intention on the part of the parties to form a binding, definite severance agreement."). Our review of the record yields no evidence of the definite nature and terms of the oral promise Delaney asserts was given. Moreover, Delaney's deposition testimony undermines any allegation that the contract terms were definite:

> **Q.** Was there any discussion about your compensation if you were to transfer into high yield sales, institutional accounts desk?
>
> **A.** Not specifically.

12

**Q.** That answer makes me ask, was there a discussion generally?

**A.** Well, simply that I would move from the commission basis of being paid to the salary/bonus structure.

**Q.** As far as the salary/bonus structure, were you told a specific salary that you would be earning?

**A.** No. But there was no change.

**Q.** There was no change from where you were in middle markets?

**A.** Yes.

**Q.** What about the bonus, was there any discussion about what bonus you would be paid?

**A.** Not specifically.

**Q.** There was no guarantee of a bonus, correct?

**A.** Right.

J.A. at 129. Additionally, the record contains no evidence of a conversation concerning the transfer of specific accounts to Delaney as part of his move from Middle Markets to High Yield. Finally, with respect to his bonus compensation, the district court correctly determined that Delaney was an at-will employee and that although annual bonuses were discretionary, there is no record evidence, or even an allegation, indicating that Delaney was promised a mid-year bonus. We thus affirm the dismissal of Delaney's breach of contract claim for substantially the same reasons as did the district court.

13

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.