17-606-cv
Angioletti v. Chao

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28ᵗʰ day of December, two thousand seventeen.

PRESENT: RALPH K. WINTER,
GERARD E. LYNCH,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

------------------------------------------------------------------------

EDITH ANGIOLETTI,

*Plaintiff-Appellant*,

v.                                                                    No. 17-606-cv

ELAINE CHAO, SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION,

*Defendant-Appellee*.

------------------------------------------------------------------------

FOR PLAINTIFF-APPELLANT: LOCKSLEY O. WADE, Law Office of Locksley O. Wade, New York, NY.

FOR DEFENDANT-APPELLEE: DIANE C. LEONARDO, Assistant United States Attorney (Varuni Nelson, Assistant United States Attorney, *on the brief*), *for* Bridget M. Rohde, Acting United States Attorney for the Eastern District of New York, Central Islip, NY.

1

Appeal from a January 31, 2017, judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Edith Angioletti appeals from a judgment of the district court granting a motion by Defendant-Appellee Elaine Chao, the Secretary of the Department of Transportation, for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on Angioletti's claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and ruling in favor of Chao on Angioletti's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, pursuant to Fed. R. Civ. P. 52(c). On appeal, Angioletti challenges the admissibility of certain witness testimony, as well as the court's Rule 50 and Rule 52 rulings on her Title VII and ADEA claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we recount here only as necessary to explain our decision to affirm.

## I.     Background

Angioletti worked at the United States Merchant Marine Academy ("the Academy") as an administrative assistant for five years. The Academy is part of the Maritime Administration, which is in turn part of the Department of Transportation. Angioletti was not a federal employee, however. She was a "NAFI" ("Non-Appropriated Fund Instrumentality") employee, meaning that funding for her position came from a non-governmental source such as alumni donations.

Following an audit by the Government Accountability Office, however, the Academy was directed to end its practice of maintaining NAFI employees. The Academy therefore began "converting" its NAFI positions to federal service positions. That required processing those positions through the federal hiring process, which in turn required posting the NAFI positions online. Because several positions, including Angioletti's, had not been converted prior to a deadline, Congress enacted special legislation permitting the Academy to give the employees in the remaining NAFI positions two-year term appointments. *See* 46 U.S.C. § 51316. Angioletti and approximately eleven other NAFI employees, nine males and two other females, received such term appointments.

The administrative assistant position was thereafter posted. Angioletti applied for the position, as did approximately two hundred other people. Eighteen of those applicants were veterans, ten of whom were deemed qualified for the position. Because federal

hiring laws required that preference be given to veterans, the government agents charged with overseeing the hiring process—individuals with the Federal Highway Administration of the Department of Transportation—forwarded a list known as a "certificate of eligibles" to Academy personnel that included only the names of the ten qualified veterans. Academy personnel were generally required to select a candidate from that list, and could not select Angioletti, who was not a veteran, because there were two or more veterans on the list. Angioletti's supervisor, Captain Eric Wallischeck (the Chief of Staff at the Academy) ultimately selected a disabled female veteran in her early twenties from the certificate of eligibles for the administrative assistant position.

Angioletti then filed this action alleging that she had been unlawfully discriminated against on the basis of her gender and/or age in violation of Title VII and ADEA. She alleged that the Academy's use of veterans' preference laws was a pretext for such discrimination. More specifically, she contended that the Academy circumvented veterans' preference laws to retain male employees who would have otherwise been displaced, but did not use those same tactics to retain older female employees.

The case eventually proceeded to trial. Angioletti's Title VII claim was tried to a jury while her ADEA claim was tried to the district court.[1] Following the close of evidence, Chao moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on Angioletti's Title VII claim and for a judgment in her favor pursuant to Fed. R. Civ. P. 52(c) on Angioletti's ADEA claim. The district court granted Chao's motions and Angioletti now appeals.

## II.    The Preclusion of Certain Witness Testimony

Angioletti maintains that the district court erred in permitting three of Chao's witnesses to testify regarding federal hiring laws and regulations in violation of Fed. R. Evid. 701. Chao responds that Angioletti forfeited this argument by failing to raise it below.

"A district court's ultimate decisions as to the admission or exclusion of evidence are reviewed for abuse of discretion, and will not be disturbed unless they are manifestly erroneous." *United States v. Ulbricht*, 858 F.3d 71, 122 (2d Cir. 2017) (internal quotation marks omitted). "It is well settled that arguments not presented to the district court are considered waived and generally will not be considered for the first time on appeal." *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015).

---

[1] There is no right to a jury trial in ADEA claims brought against the federal government. *See Lehman v. Nakshian*, 453 U.S. 156 (1981).

We agree with Chao that Angioletti has forfeited this evidentiary challenge.

Angioletti did not object during the testimony of two of the witnesses, Kirstin Wolverton, a human resources specialist with the Federal Highway Administration, and Ray Venkersammy, a human resources specialist at the Academy. To the contrary, Angioletti's counsel asked both witnesses about their familiarity and experience with federal hiring regulations. Although Angioletti moved prior to trial to preclude Wolverton and Venkersammy from testifying, the basis of that motion was that they had not been disclosed pursuant to Fed. R. Civ. P. 26(a)(1)(E),[2] not that their anticipated testimony would violate Fed. R. Evid. 701.[3]

With respect to the testimony of the third witness, Kim Norris, a human resources specialist with the Maritime Administration, Angioletti objected only to (1) a question by Chao's counsel that asked whether a certain government agency audits other federal agencies and (2) to Chao's request to enter in evidence a copy of the legislation allowing the Academy to give the remaining NAFI employees two-year term appointments. The basis for the first objection is not entirely clear, but it cannot be reasonably understood as a challenge to Norris's subsequent testimony discussing federal hiring laws. *See Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 281 (2d Cir. 2004) (requiring objecting party to put the court on notice of the basis for its objection). Angioletti's objection to the legislation meanwhile appears to have been a challenge only to a copy of the statute being admitted into evidence. If she intended it to be more than that, she failed to adequately identify either Norris's testimony, as opposed to the documentary evidence itself, or Rule 701, as the basis for her objection.[4] *See id.*

---

[2] To the extent that Angioletti challenges the district court's denial of her pretrial motion to preclude Wolverton and Venkersammy from testifying, we find her challenge unpersuasive. Preclusion is a harsh remedy, *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988), and it was not an abuse of discretion for the district court to decline to make use of that remedy in this case. Angioletti did not articulate any prejudice that arose from Chao's failure to disclose these witnesses (who were apparently known to Angioletti), failed to timely move to preclude them, and received a continuance after their disclosure, albeit for reasons unrelated to her motion. *See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (discussing factors relevant to determining whether district court abused its discretion in granting or denying motion to preclude testimony).

[3] Although Angioletti argued prior to Wolverton taking the stand that Wolverton's testimony was unnecessary insofar as it would concern only legal opinions, Angioletti did not at that time raise Rule 701 nor contend that the testimony would be otherwise improper.

[4] Even if Angioletti's objection to the statute was sufficient to raise her Rule 701 objection, the district court did not abuse its discretion when it permitted Norris's testimony. A "lay witness may testify in the form of an opinion . . . so long as that testimony is helpful to a clear understanding of the witness' testimony

Notably, Angioletti also asked Norris questions concerning her knowledge of federal hiring regulations on cross-examination.

In sum, Angioletti has failed to preserve her challenge to the testimony of Wolverton, Venkersammy, and Norris, and we therefore decline to consider it.

### III.    Judgment As A Matter of Law on Angioletti's Title VII Claim

Angioletti next argues that the district court erred by granting Chao's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).

"We review *de novo* a district court's decision to grant a Rule 50 motion for judgment as a matter of law," *Newton v. City of New York*, 779 F.3d 140, 146 (2d Cir. 2015) (internal quotation marks omitted), construing the evidence in the light most favorable to Angioletti, *Dancy v. McGinley*, 843 F.3d 93, 99 (2d Cir. 2016). "Judgment as a matter of law is appropriate only if the court can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." *Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir.), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016) (alterations and internal quotation marks omitted). Where, as here, a defendant has proffered a non-discriminatory reason for its actions, a plaintiff seeking to rebut a defendant's proffered reason "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (alterations and internal quotation marks omitted).

Angioletti argues that the Academy circumvented the federal hiring process to benefit male employees but not her, a female employee. Specifically, Angioletti focuses on testimony by (1) Shirley Anthony, another female Academy employee who also lost her position due to the NAFI conversion process, that all nine males in the group of twelve

---

or the determination of a fact in issue." *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (internal quotation marks omitted). Here, to the extent that Norris may have offered any opinion, her testimony helped the jury understand *why* she thought veterans' preference laws prohibited the Academy from hiring Angioletti. Angioletti's reliance on our statement that "Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision," *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000), is not persuasive. Unlike in *Hester*, where several witnesses opined simply that the plaintiff's treatment must have been related to her race, *id.* at 183, Norris did not speculate about Wallischeck's motivations. Instead, she explained why, pursuant to federal law, Angioletti's name was not on the certificate of eligibles.

employees who were given two-year term appointments were able to retain their jobs (but that two of the three females in that group were not); (2) Captain Wallischeck purportedly conceding that some of those nine males "may have been" rehired by the Academy through a temporary employment agency; (3) Norris stating that some of the Academy's information technology employees' positions were contracted out; and (4) Venkersammy stating that two males from the group of twelve term employees still worked at the Academy.

The evidence that Angioletti relies on does not support her contention that the Academy unlawfully discriminated and circumvented federal hiring laws. Venkersammy, for example, testified that of the two males who were given term appointments who still worked at the Academy, one male had been displaced by a veteran who then decided to leave, enabling that male to get his job back, and the other male was able to return to the Academy in a different job. Wallischeck stated on cross-examination that he did not know what happened to some of the nine males and speculated only that they "may have been" able to continue working through a temporary employment agency when directly asked by Angioletti's counsel if that might be the case.

Other evidence regarding other employees' jobs was of questionable relevance to Angioletti's specific situation. For instance, although Norris testified that information technology jobs were contracted out—thereby suggesting that the employees in those positions may have been able to retain their jobs—she did not state that Angioletti's position could have been similarly contracted out.

Finally, Anthony's testimony that all nine males were given the opportunity to retain their positions, but only one of the three females was, is insufficient to suggest that the Academy's reliance on veterans' preference requirements was pretextual.

First, Anthony did not testify that those nine males retained their jobs even though they should have been displaced by qualified veterans. Chao's evidence made clear that the reason Angioletti was not retained was because qualified veterans applied for, and had to be given absolute preference for, Angioletti's position. It may well have been the case that the nine males and one female who allegedly retained their positions were not blocked by veterans' preference laws. Indeed, Venkersammy testified that at least one male from the group competed for, and was selected for, his former job.

Second, the record demonstrates that several male NAFI employees whose jobs were posted before the original conversion deadline were also displaced by veterans. This

evidence, which Angioletti failed to meaningfully rebut,[5] demonstrates that a number of males *and* females were displaced, and that any circumvention of the hiring process was not based on gender discrimination, but on some other factor such as whether positions could be contracted out.

Chao put forth extensive evidence indicating that Angioletti was not selected because a number of qualified veterans applied for *her* position. Angioletti failed to rebut that evidence. Instead, she offered evidence that other individuals may have retained their positions. In doing so, she failed to establish that those other individuals should have been replaced by veterans pursuant to federal hiring laws, or that the alternate process that allowed them to keep their jobs could have been used to allow Angioletti to maintain her position. Notably, Angioletti was also replaced by a female, casting further doubt on her claim. Therefore, the district court did not err when it granted Chao's motion for judgment as a matter of law on the sex discrimination claim.

## IV.     The District Court's Conclusion on Angioletti's ADEA Claim

Finally, Angioletti contends that the district court erred when it ruled in Chao's favor pursuant to Fed. R. Civ. P. 52(c) on her ADEA claim. The district court rejected Angioletti's ADEA claim after concluding that Angioletti had either failed to establish an inference of age discrimination or, in the alternative, failed to adequately rebut Chao's non-discriminatory reason for her action.

"Following a bench trial, this Court reviews the district court's findings of fact for clear error and its conclusions of law and mixed questions *de novo*." *United States v. Apple, Inc.*, 791 F.3d 290, 313 (2d Cir. 2015) (internal quotation marks omitted).

Under the ADEA, "age must be the but for cause of the adverse employment action." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014). The requirement that a plaintiff who seeks to demonstrate that a defendant's proffered reasons for its actions must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action," *Weinstock*, 224 F.3d at 42 (alterations and internal quotation marks omitted), applies with

---

[5] After originally stating that men and women from the original group of NAFI employees lost their jobs Anthony stated that only three women from that group, including Angioletti and herself, lost their jobs. She later conceded, however, that a man from that group had lost his job but was able to secure another position at the Academy. Thus, Anthony's testimony does not establish that no males from the original NAFI group lost their jobs.

equal force under the ADEA, *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).

Even assuming without deciding that the district court erred when it concluded that Angioletti failed to establish a *prima facie* inference of age discrimination, we agree that Angioletti failed to rebut Chao's assertion that Angioletti was not hired because of mandatory veterans' preference requirements. As we have already pointed out, the evidence Chao put forward in support of her contention that Angioletti was not hired because of laws concerning preference for veterans was compelling. Additionally, Wallischeck, who ultimately hired Angioletti's replacement, denied making his hiring decision based on Angioletti's age or that of her replacement. By contrast, we find no evidence that suggests that veterans' preference requirements were invoked as a pretext to hide discrimination on the basis of age. For example, the record reflects no remarks about Angioletti's age save for one she made herself. Even if another Academy employee had commented on Angioletti's age, such a comment would not be sufficient to establish discrimination. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (noting that evidence of one stray comment regarding age is generally insufficient to establish a *prima facie* case of discrimination). Indeed, relatively little trial testimony was devoted to developing Angioletti's age discrimination claim, and the few facts that bear on the question of whether she was subjected to such discrimination ultimately fail to establish that she was not hired because of her age.

Therefore, the district court correctly rendered judgment in favor of Chao on Angioletti's ADEA claim as well.

## V.     Conclusion

We have considered Angioletti's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

</div>