Roth v. Armistice Capital, LLC

In the

# United States Court of Appeals

For the Second Circuit

_____

August Term 2024

No. 24-950

ANDREW E. ROTH,

*Plaintiff-Appellant,*

*v.*

ARMISTICE CAPITAL, LLC, ARMISTICE CAPITAL MASTER FUND LTD.,
STEPHEN J. BOYD

*Defendants-Appellees,*

VAXART, INC.,

*Nominal Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of New York
No. 1:20-cv-08872, Jennifer L. Rochon, District Judge, Presiding.
(Argued March 19, 2025; Decided August 28, 2025)

Before:     PARKER, ROBINSON, and PÉREZ, *Circuit Judges.*

Plaintiff-Appellant Andrew E. Roth sued Defendants-Appellees in the Southern District of New York, claiming that they engaged in a short-swing transaction in violation of Section 16(b) of the Securities Exchange Act. Appellees Armistice Capital, LLC and Armistice Capital Master Fund Ltd. (collectively "Armistice") are an investment manager and its client fund that owned shares in Nominal Defendant Vaxart, Inc., a company that sought to develop an oral COVID-19 vaccine. Appellee Stephen J. Boyd was an officer of Armistice and a member of the board of directors of Vaxart.

Armistice held warrants to purchase common stock in Vaxart. On June 26, 2020, Vaxart announced that its oral COVID-19 vaccine had been selected to participate in a study sponsored by the federal government. Following this announcement, Armistice exercised the warrants and sold Vaxart shares, realizing an $87 million profit. Roth, technically suing on behalf of Vaxart, seeks disgorgement of the profit back to the corporation, contending that the sale constituted a short-swing transaction in violation of Section 16(b) of the Securities Exchange Act. That provision prohibits insiders (such as Armistice and Boyd) from purchasing and selling an issuer's stock within a six-month period.

Appellees moved for summary judgment, arguing that the sale did not violate Section 16(b) and that, in any event, they were expressly exempt from liability under SEC Rule 16b-3(d) because the sale had been approved by Vaxart's board of directors. The District Court granted the motion, reasoning that even if Appellees violated Section 16(b), they were shielded from liability under SEC Rule 16b-3(d) because the Vaxart board approved the transaction with knowledge of all material facts. We agree with the District Court and we AFFIRM the judgment.

GLENN F. OSTRAGER, JOSHUA S. BROITMAN, *and* STEVEN W. ZOFFER, Ostrager Chong Flaherty & Broitman P.C., New York, NY, *for* Plaintiff-Appellant.

JAMES E. TYSSE, DOUGLAS A. RAPPAPORT, KAITLIN D. SHAPIRO, *and* MICHAEL CHEN, Akin Gump Strauss Hauer & Feld LLP, New York, NY, *for* Defendants-Appellees.

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Andrew E. Roth sued Defendants-Appellees in the Southern District of New York, claiming that they engaged in an insider securities transaction that violated Section 16(b) of the Securities Exchange Act. 15 U.S.C. § 78p(b). Defendants-Appellees Armistice Capital, LLC and Armistice Capital Master Fund Ltd. (collectively "Armistice") are respectively an investment manager and its client investment fund that owned shares of Nominal Defendant-Appellee Vaxart, Inc., a company that sought to develop an oral COVID-19 vaccine. Defendant-Appellee Stephen J. Boyd is the Chief Investment Officer of Armistice Capital and served on the board of Vaxart. Non-party Keith Maher similarly served in Armistice management and on the board of Vaxart. Roth was a shareholder in Vaxart.

Armistice held two sets of warrants to purchase common stock in Vaxart. Both warrants contained provisions limiting the total equity Armistice could own in Vaxart to 4.99% and 9.99% (so-called "blocker provisions"). Boyd then petitioned the Vaxart board to amend the warrants to permit Armistice to own up to 19.99% in Vaxart stock. The Vaxart board unanimously voted to amend the warrants to adopt this change. Then, on June 26, 2020, Vaxart announced that its

3

oral COVID-19 vaccine had been selected to participate in a non-human-primate challenge study sponsored by the federal government. Following this announcement, Armistice exercised the warrants, obtained additional shares, and then liquidated its position in Vaxart, allegedly realizing an $87 million profit.

In this lawsuit, Roth seeks disgorgement of the $87 million profit back to Vaxart, contending that Appellees violated Section 16(b) of the Securities Exchange Act. That provision requires insiders (such as Armistice and Boyd) to disgorge profits back to an issuing corporation after purchasing and selling that issuer's stock within a six-month period (a so-called "short-swing" transaction). Roth contends that amending the warrants to permit Armistice to own 19.99% of Vaxart's shares, followed by Armistice's exercise of the warrants and ensuing sale of its Vaxart stock, constituted an illegal short-swing transaction that violated Section 16(b).

Following discovery, Appellees moved for summary judgment, arguing that even if they were insiders who engaged in a short-swing transaction, they were expressly exempt from liability under Securities and Exchange Commission (SEC) Rule 16b-3(d). That Rule shields insider traders from liability if, as occurred here, the defendant purchased equity securities directly from the issuer, and the

4

issuer's board approved the insider short-swing transaction in advance. The District Court agreed that Rule 16b-3(d) precluded liability, reasoning that Vaxart's board was fully aware that Appellees were insiders and unanimously approved of the warrant amendments to increase Armistice's equity cap. We agree and **AFFIRM** the judgment of the District Court.

## BACKGROUND

### I.    Factual Background[1]

Appellee Armistice Capital is an investment manager. Appellee Stephen J. Boyd is the founder, Managing Member, and Chief Investment Officer of Armistice Capital. Non-party Dr. Keith Maher serves as a Managing Director of Armistice Capital. Armistice Capital manages investments for its client, the Master Fund. The Master Fund is an investment vehicle which holds funds from multiple investors in a single pooled account. Boyd serves as a member of the Master Fund's board.

Nominal Appellee Vaxart is a publicly traded biotech company that seeks to develop COVID-19 vaccines administered through tablets, as opposed to

---

[1] Background facts in this opinion are drawn from the summary judgment record and—except where noted—are either admitted, not in genuine dispute, or viewed in the light most favorable to Roth. *See Delaney v. Bank of America Corp.*, 766 F.3d 163, 167 (2d Cir. 2014).

injections. Armistice invested in Vaxart in 2019 and, at one time, held over half of Vaxart's outstanding common shares.

In addition to acquiring Vaxart common shares, Armistice also acquired two series of warrants in April 2019 and September 2019 that gave Armistice the right to buy additional Vaxart shares. Each of these warrants included a "blocker provision"—a limitation on the total shares that Armistice was permitted to hold. Under the relevant blocker provisions, Armistice could exercise its warrants and receive shares only to the extent that Armistice's total holdings following the exercise would not exceed 4.99% or 9.99% of Vaxart's outstanding shares, depending on the warrant. If Armistice exercised the April 2019 warrants, the 4.99% limitation would apply, and if it exercised the September 2019 warrants, the 9.99% provision would apply.

After Armistice had acquired its stake in Vaxart, Boyd requested changes to Vaxart's board of directors, specifically asking to replace two Vaxart directors with Armistice-affiliated directors and by adding two seats to the Board to be filled by independent directors of Armistice's choice. The parties sharply dispute whether Boyd's request was in a personal capacity or on behalf of Armistice, but there is no dispute that Vaxart ultimately granted Boyd's request.

6

When Boyd and Maher joined Vaxart's board in October 2019, they still held their positions at Armistice. At the same time, at Boyd's recommendation, non-parties Robert A. Yedid and Todd C. Davis filled two new Board seats as independent directors. Through their tenures as directors of Vaxart, Boyd and Maher received confidential information about Vaxart. Neither received compensation from Vaxart for their board service, as Armistice's policies prohibited them from doing so.

In May 2020, Boyd and Vaxart's then-Chief Executive Officer (CEO) Wouter Latour discussed amending the warrants' blocker provisions to raise Armistice's equity limit to 19.99%. Latour then reached out to the members of the Vaxart board—except Boyd and Maher—to discuss the proposed amendments. On June 1, 2020, the non-Armistice directors participated in a call with Vaxart's outside counsel to discuss the benefits and drawbacks of the potential amendments to the blocker provisions. Because Boyd and Maher were considered interested parties, they did not participate in the call.

On June 5, 2020, the Vaxart board approved the amendments through a "Unanimous Written Consent." The Consent was executed on June 8, 2020, by all eight directors, including all six disinterested, non-Armistice directors, plus Boyd

7

and Maher. The amendments increased the blocker provisions in both series of warrants to 19.99%. App'x 294–304. The resolution specifically acknowledged that Boyd and Maher were "Interested Parties" because they were members of the board of Vaxart as well as affiliates of Armistice. *Id.* The resolution also confirmed that the transactions were "fully disclosed to all members of the Board" as "Interested Party Transactions." *Id*.

Following the increase to 19.99%, Armistice exercised its warrants on June 26 and 29, 2020, and sold 27,612,053 shares of Vaxart—20,612,053 of which were shares that Armistice received after exercising the warrants. In these transactions, Armistice liquidated virtually all of its Vaxart holdings and allegedly netted more than $87 million dollars.

## II. Procedural History

After these sales, Appellant Andrew E. Roth, a shareholder in Vaxart, sued Appellees, alleging violations of Section 16(b) of the Securities Exchange Act. Congress enacted Section 16(b) to "prevent[] the unfair use of information which may have been obtained" by a statutory insider. 15 U.S.C. § 78p(b); *see also Kern Cnty. Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 592 (1973). Section 16(b) thus imposes strict liability on statutory "insiders"—namely, "beneficial owners, directors, and officers," *see* 15 U.S.C. § 78p(b)—requiring them to disgorge profits

8

when the insider purchases and sells an issuer's stock within a six-month period (so-called "short-swing profits" from "matching transactions"). *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012). Where statutory insiders realize short swing profits from violating Section 16(b), they must disgorge them to the issuing corporation "even if they did not trade on inside information or intend to profit on the basis of such information." *Id.* at 223; *see also Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 244 (2d Cir. 2008).

Because Boyd and Maher sat on Vaxart's board, Roth alleged that Appellees were insiders. Roth further alleged that the amendments to the warrants increasing the equity Armistice could own to 19.99% constituted a cancellation and re-grant of the warrants and therefore was an "acquisition" for purposes of Section 16(b). Accordingly, Roth contends that when Armistice exercised the warrants and acquired and sold its Vaxart shares, Appellees violated Section 16(b).

Following discovery, the Appellees moved for summary judgment and the District Court granted the motion. *See Roth v. Armistice Capital, LLC*, No. 20-cv-8872, 2024 WL 1313817, at *15 (S.D.N.Y. Mar. 27, 2024). There was no serious dispute that Appellees were "insiders." *Id.* at *11. The District Court did not consider whether the amendments increasing the equity Armistice could own in

9

Vaxart constituted a "short-swing" transaction in violation of Section 16(b) but concluded that the Appellees were exempt from liability under SEC Rule 16b-3(d). That Rule shields insiders from liability under Section 16(b) when the board of the issuer (i.e., Vaxart) approves the transaction in advance. The District Court concluded that, because the Vaxart board knew that Appellees were insiders but unanimously approved the warrant amendments, Vaxart authorized Armistice to acquire the shares and the transaction complied with Rule 16b-3(d). This appeal followed.

## STANDARD OF REVIEW

We review *de novo* a district court's decision to grant summary judgment, construing the evidence in the light most favorable to the party against whom summary judgment was granted and drawing all reasonable inferences in that party's favor. *Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023). Under Rule 56(a), summary judgment may be granted only if the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## DISCUSSION

Roth seeks disgorgement of Armistice's profit under Section 16(b). The District Court concluded that, even assuming Appellees violated Section 16(b), they are exempt from liability under SEC Rule 16b-3(d) because the challenged transaction was "approved in advance by the issuer's board of directors." *Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 (2d Cir. 2002).

We agree. Rule 16b-3(d) shields statutory insiders from liability when their short-swing transactions are "approved by the board of directors of the issuer." 17 C.F.R. § 240.16b-3(d). By amending the warrants' equity cap, Vaxart's board authorized Armistice's purported short-swing transaction.

First, Roth contends that Appellees were statutory insiders who engaged in a short-swing transaction in violation of Section 16(b) because they engaged in a "purchase and sale of securities within a six-month period" when Armistice received its amended warrants on June 5 and then exercised those warrants and sold its Vaxart shares over a three-day period ending June 29.

11

The District Court correctly recognized that both Armistice and Boyd were statutory insiders subject to Section 16(b). Boyd was a textbook insider because he served on the board of Vaxart. Armistice was an insider because "an investor becomes a statutory insider when it deputizes an individual to serve as its representative on an issuer's board of directors." *Rubenstein v. Int'l Value Advisors, LLC*, 959 F.3d 541, 550 (2d Cir. 2020); *see also Perseus*, 522 F.3d at 244. The District Court concluded that, as an undisputed factual matter, Armistice deputized Boyd and Maher to serve as its representatives on Vaxart's board. App'x 294–95 (listing Boyd and Maher as Vaxart directors).

Nevertheless, the District Court concluded that Appellees were exempt from liability under Rule 16b-3(d). We agree. Section 16(b) liability does not attach to any transaction "which the Commission by rules and regulations may exempt as not comprehended within the purpose of" Section 16(b). 15 U.S.C. § 78p(b). Rule 16b-3(d), in turn, exempts from liability those transactions that are "approved by the board of directors of the issuer." 17 C.F.R. § 240.16b-3(d). The SEC reasons that when the board approves the transaction of a statutory insider, any profit obtained is with the full awareness of the board and is thus "not at the expense of uninformed shareholders and other market participants of the type contemplated

12

by the statute." Ownership Reports and Trading by Officers, Directors and Principal Security Holders, 61 Fed. Reg. 30,376, 30,377 (Jun. 4, 1996).

Accordingly, a statutory insider who has engaged in a short-swing transaction is exempt from liability under Rule 16b-3(d) if (1) the transaction "involve[s] the [insider] acquiring issuer equity securities from the issuer," (2) the insider is "a director or officer of the issuer at the time of the transaction," and (3) the transaction is "approved in advance by the issuer's board of directors." *Gryl*, 298 F.3d at 141. This shield extends to directors by deputization, such as Armistice. *See Perseus*, 522 F.3d at 246–47.

The District Court correctly concluded that Appellees were exempt from liability under Rule 16b-3(d), because the transaction satisfies the three conditions articulated in *Gryl*. First, it is undisputed that the transaction at issue "involve[s] the defendant acquiring issuer equity securities from the issuer." *Gryl*, 298 F.3d at 141. Vaxart's board approved amendments to the blocker provision that increased the maximum percentage of Vaxart stock Armistice could hold to 19.99%. App'x 294–95. Appellees then exercised their warrants and acquired additional Vaxart shares. Second, the District Court concluded (and it is undisputed) that Appellees were directors of the issuer at the time of the transactions. *Gryl*, 298 F.3d at 141.

13

Third, and finally, the changes to the warrants' blocker provisions were "approved in advance by [Vaxart's] board of directors," as reflected in the Unanimous Written Consent. *Gryl*, 298 F.3d at 141; *see also* App'x 495 ¶ 21 (Joint Statement of Material Fact). Accordingly, Appellees satisfy all three requirements and are therefore exempt from liability under Rule 16b-3(d).

Roth argues that the Rule 16b-3(d) exemption does not apply because the Vaxart board was unaware that Armistice was a "director by deputization" of Vaxart. Under Roth's theory, it was not enough that the rest of the Vaxart board understood Boyd and Maher served as the representatives of Armistice during their tenures as directors of Vaxart. Instead, the Vaxart board had to understand that Armistice *itself* was a director, and thus, Armistice had to formally "disclose[] to Vaxart its status as a director by deputization." Appellant's Br. 33. Roth, in effect, articulates a new knowledge requirement for the Rule 16b-3(d) exemption to apply: when approving a short-swing transaction, the issuer's board must have actual knowledge of the investor's formal status as an insider director by deputization.

The District Court correctly rejected this novel knowledge requirement, because it finds no support in the text of the Regulation or in our case law. Indeed,

we have already considered a similar argument that a board's approval must be "purpose-specific" to a Rule 16b-3 exemption and held that "the text of [Rule 16b-3(d)] itself contains no suggestion that such a requirement exists." *Gryl*, 298 F.3d at 145. We have explained that,

> [s]o long as the relevant securities transaction is between an issuer and insider, and so long as the terms and conditions of that transaction receive advance approval by the board of directors, there exists sufficient protection to ensure that any short-swing profit taking that follows is not the result of unfair market manipulation.

*Id.* at 145–46.

Roth suggests that to be an effective gatekeeper in these circumstances, an issuer's board must be aware that the transaction it approved was an insider transaction. But the issuer's board need not be on notice of the investor's formal, legal status as a "director by deputization" to understand that it is approving a transaction with an insider. Instead, to ensure that short-swing profits are not "at the expense of uninformed shareholders," an issuer's board simply needs to be aware that one of its members serves as the eyes, ears, voice, and vote of an investor when deciding whether to approve a transaction with that investor. *Id.*

(quoting 61 Fed. Reg. at 30,377).  Roth's new knowledge requirement finds no support in Rule 16b-3(d) or the applicable case law.[2]

At most, Rule 16b-3(d) requires that the Vaxart board understood Boyd and Maher to be acting as representatives of Armistice when it permitted the investor to acquire additional equity.  That much is beyond dispute.  The Unanimous Written Consent unambiguously confirms that "each of the members of the Board [was] aware of the material facts of the relationships and/or interests of [Armistice] with and in [Vaxart]." App'x 294–95.  Vaxart's SEC filing announcing Boyd and Maher's appointment to its board acknowledges that Boyd and Maher "are not independent by virtue of their positions with [Armistice]."  App'x 350.  And attestations from individual directors of Vaxart confirmed they understood Boyd and Maher to be "Armistice's representatives on the Vaxart board."  App'x 98.[3]

---

[2] Roth appears to derive this proposed knowledge requirement from an expansive reading of an amicus brief submitted by the SEC in *Dreiling v. American Express Co.*, 458 F.3d 942 (9th Cir. 2006).  There, the SEC emphasized that directors should not be "unaware" that the person acquiring stock is a director, but the SEC was silent as to whether directors must understand the *legal conclusion* that the person acquiring stock has a deputized director, or must merely know the *underlying facts* that lead to that conclusion.  Because it does not answer the question before us, this amicus brief has no authoritative or persuasive force.

[3] *See also, e.g.*, App'x 98 (director Robert Yedid understood Boyd and Maher were "extension[s] of Armistice"); App'x 125 (director Todd Davis understood

16

For these reasons, the District Court concluded that the Vaxart board unquestionably understood that Boyd and Maher were representing Armistice at the time that it approved the amendments to the warrants. We see no error. Roth does not contest that the Vaxart board understood that Boyd and Maher represented Armistice's interests, that sharing confidential information with them was tantamount to sharing it with Armistice. Nor does he otherwise dispute that the entire board knew of Armistice's representation through Boyd and Maher. Roth's contention that some sort of additional but undefined "formal" notice of Armistice's legal status as a director was required is not grounded in applicable law or regulations. For these reasons, we conclude that the District Court correctly granted summary judgment.

## CONCLUSION

We **AFFIRM** the judgement of the District Court.

---

Boyd and Maher "were extensions of Armistice on the Board"); App'x 132 (director Michael Finney knew Boyd and Maher "were representing Armistice's interests"); App'x 138 (director Andrei Floroiu understood Boyd and Maher "were put on the [Vaxart] Board to represent Armistice's interests"); App'x 146 (director Anne VanLent understood Boyd and Maher "were representatives of Armistice").

17